**LOCAL 32, AFGE, AFL–CIO, Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent,**

and

**Office of Personnel Management, Intervenor.**

**No. 82–1756.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 14, 1983.

Decided March 13, 1984.

---

Phillip R. Kete *, Washington, D.C., with whom Janice M. Xaver, Washington, D.C., was on the brief, for petitioner. Daniel M. Schember, Washington, D.C., also entered an appearance for petitioner.

Robert J. Englehart, Atty., Federal Labor Relations Authority, Washington, D.C., with whom Steven H. Svartz, Acting Sol., Federal Labor Relations Authority, Washington, D.C., was on the brief, for respondent.

William Kanter and John C. Hoyle, Attys., Dept. of Justice, Washington, D.C., entered appearances for intervenor, Office of Personnel Management.

Before EDWARDS and BORK, Circuit Judges, and FAIRCHILD,** Senior Circuit Judge, United States Court of Appeals for the Seventh Circuit.

Opinion for the Court filed by Senior Circuit Judge FAIRCHILD.

FAIRCHILD, Senior Circuit Judge:

Local 32 seeks review of the Federal Labor Relations Authority's decision upholding OPM's refusal to bargain over two union proposals: Proposal II,[1] that positions be filled from a certificate of best qualified applicants, and Proposal VI, that an employee demoted through no fault of his/her own be selected to fill the first vacancy at his/her former grade level.[2] The Authority concluded that both proposals infringed on OPM's rights under 5 U.S.C. § 7106(a)(2)(C). *See* 8 F.L.R.A. No. 97 (1982). This subsection reserves to the agency the authority, "with respect to filling positions, to make selections for appointment from—(i) among properly ranked and certified candidates for promotion or (ii) any other source."

---

\* Entered an appearance as Student Counsel pursuant to Rule 20 of the General Rules of this Court.

\*\* Sitting by designation pursuant to 28 U.S.C. § 294(d).

1. The union proposals under review by this court were two of six considered by the Authority. We retain the original numbering of the proposals.

2. OPM was permitted to intervene in this case but did not file a separate brief.

The agency's authority to fill positions under § 7106(a)(2)(C) is not without limit. Section 7106(b) states in part:

Nothing in this section shall preclude any agency and any labor organization from negotiating—

. . . .

(2) procedures which management officials of the agency will observe in exercising any authority under this section; or

(3) appropriate arrangements for employees adversely affected by the exercise of any authority under this section by such management officials.

5 U.S.C. § 7106(b)(2), (3).

■ In *American Federation of Government Employees Local 2782 v. FLRA*, 702 F.2d 1183 (D.C.Cir.1983), this circuit examined the extent to which § 7106(b)(2) and (3) permit negotiation of proposals involving the filling of positions of employment otherwise reserved to management discretion by § 7106(a)(2)(C). The court found that § 7106(b)(2) permits negotiation of "procedures" for implementing the substantive rights of management guaranteed by § 7106(a). In this way § 7106(b)(2) clarifies rather than limits the scope of management rights under § 7106(a). 702 F.2d at 1186. Accordingly, the court noted, this circuit has approved the Authority's "direct interference test" to determine if a proposal may be characterized as "procedural" and therefore negotiable. *Id.* "[A] proposal . . . [is] nonnegotiable if its implementation would 'directly interfere with the agency's basic right'" as reserved under section 7106(a). *Dept. of Defense v. FLRA*, 659 F.2d 1140, 1159 (D.C.Cir.1981), *cert. denied sub nom. AFGE v. FLRA*, 455 U.S. 945, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982) (quoting *AFGE v. Air Force Logistics Command*, 2 F.L.R.A. 604, 613 (1980)).

The *American Federation* court contrasted the clarifying function of § 7106(b)(2) with the limiting function of § 7106(b)(3).

There is no way to regard "appropriate arrangements for employees adversely affected" as a *clarification* of the scope of management prerogatives. "Appropriate arrangements" (unlike "procedures") is a meaningless clarification—and one that would not have to be limited to "employees adversely affected" as opposed to *all* employees. The conclusion is unavoidable that what was intended was an *exception* to the otherwise governing management prerogative requirements of subsection (a).

702 F.2d at 1187 (emphasis in original). The court found the Act's legislative history further supports a reading of § 7106(b)(3) as permitting the negotiation of some constraints on § 7106(a) management prerogatives.

With this understanding of the interplay of §§ 7106(a)(2)(C), (b)(2) and (b)(3), we turn to the proposals at issue in this case. Proposal II provides:

Except where management is required by law, regulation, or this contract to select a particular person, selections for vacancies will be made by officials choosing from a certificate of best-qualified applicants for the position. The parties may, from time to time, agree to deviations from this requirement in individual cases or categories of cases, when they deem it advisable for affirmative action or other legitimate purposes. The parties note that they are in disagreement over the agency's claim that 5 U.S.C. 7106(a) gives it the legal right or duty to unilaterally disregard the competitive selection requirement under certain circumstances. The merits of the management claim in any particular case will be considered by the parties in their efforts to resolve any resulting grievance, and the parties note the obligation of arbitrators to interpret contract provisions in light of governing law. The parties note further that an arbitration award ordering remedies contrary to governing law may be overturned on appeal to the Federal Labor Relations Authority.

The Authority interpreted Proposal II as requiring OPM to make "selections for appointments from among properly ranked and certified candidates for promotion under section 7106(a)(2)(C)(i) . . . and as a corollary . . . not [to] make selections for

appointments from any other appropriate source under section 7106(a)(2)(C)(ii)." The Authority therefore concluded Proposal II interfered with agency discretion reserved by subsection (a)(2)(C)(ii), and was nonnegotiable. On review, the Authority simply argues that Proposal II requires that management fill positions from a limited list of best qualified candidates.

■ The question for us is whether the Authority's application of the Act is "arbitrary, capricious, abusive of discretion [or] contrary to law." *National Treasury Employees Union v. FLRA,* 691 F.2d 553, 564 (D.C.Cir.1982). We cannot say the Authority's finding concerning Proposal II is any of those.

Local 32 disputes the Authority's interpretation of Proposal II. The union explains that its proposal for a certificate of best qualified applicants was meant to insure that the merits of candidates from all sources be considered in the formulation of a certified list; the proposal was not intended to require that management select only from promotion eligibles. It suggests that management could make its best qualified certificate large enough to include every qualified applicant, and conceivably could choose the comparatively least qualified one.

Although the language of the Proposal could conceivably be stretched to that extent, it is contrary to the ordinary meaning of the terms "best qualified." The Federal Personnel Manual explains:

> *Best qualified candidates* are measured against other candidates. They are qualified candidates who rank at the top when compared with other eligible candidates for a position. A reasonable number of the best qualified candidates are referred for selection.

Federal Personnel Manual 335–3 (1981). Judged by ordinary meaning, Proposal II appears to entail the filling of positions from among some number of applicants comparatively rated as having superior qualifications. It would follow that Proposal II would limit management's authority to select an applicant who was qualified but not on the certificate of best qualified.

Under the circumstances, we are unable to find the Authority acted unreasonably in interpreting Proposal II as restricting OPM's right under § 7106(a)(2)(C) to select from among properly ranked and certified candidates for promotion or any other appropriate source.

Local 32 asks, in the event we accept the Authority's interpretation of Proposal II, that we remand for consideration whether Proposal II is "procedural" in nature, making it negotiable under § 7106(b)(2). We decline. In effect, the Authority has already rejected the proposition that Proposal II is procedural. The Authority has held, and this Circuit has approved, that a proposal which directly interferes with a substantive right reserved by § 7106(a) to management discretion is by definition not "procedural" under § 7106(b)(2). *See American Federation,* 702 F.2d at 1186; *Dept. of Defense,* 659 F.2d at 1159. The Authority has already determined that Proposal II, as interpreted, interferes with management rights under § 7106(a)(2)(C).

■ Proposal VI reads:
Notwithstanding any other provision of this contract, a repromotion eligible (i.e., an employee demoted through no fault of his or her own) will be selected for the first vacancy at his or her former grade level which management would otherwise fill competitively, for which the employee is qualified and for which he or she applies, unless there are persuasive reasons for passing the employee over. An employee will retain this eligibility until repromoted to his or her former grade.

Proposal VI is nearly identical to the repromotion eligible proposal considered in *American Federation.*[3] In that case, this circuit acknowledged that a provision re-

---

**3.** The *American Federation* court considered the following proposal:

> Notwithstanding any other provision of this article, a repromotion eligible (i.e., an employee demoted through no fault of his or her own) will be selected for the first available vacancy for which he or she fully meets the qualification standards and which the agency determines to fill.

*See* 7 F.L.R.A. 91 (1981).

quiring the hiring of a repromotion eligible might restrict an agency's § 7106(a)(2)(C) right to hire from any source. But the court rejected the Authority's position, also advanced here, that a provision limiting a § 7106(a) right is never negotiable. The court concluded that repromotion proposals may be negotiable under § 7106(b)(3) as "appropriate arrangements for employees adversely affected by the exercise of . . . [management] authority."

The *American Federation* court decided that the word "appropriate" in the phrase "appropriate arrangements" can bear some, if little, weight. "Undoubtedly, some arrangements may be inappropriate because they infringe upon management prerogatives *to an excessive degree*." 702 F.2d at 1188. In remanding, this court left the Authority free to determine whether the Proposal was inappropriate.

We find a remand unnecessary here. Proposal VI can be distinguished from the *American Federation* proposal because the arrangement for which the union wishes to negotiate would permit passing over the demoted employee if "there are persuasive reasons" for doing so. With that safety valve present, it would be very difficult to make a claim that the arrangement, if negotiated, would infringe upon management prerogatives to an excessive degree.[4]

The Authority's decision with respect to Proposal II is AFFIRMED, and with respect to Proposal VI is REVERSED and REMANDED for the entry of an order requiring bargaining.

---

**4.** The Authority has already approved a provision that only permitted the agency to pass over a repromotion eligible for "good cause," where the phrase "good cause" encompasses "rights reserved to management under the stat-ute." *See American Federation of Government Employees Local 2782 v. Bureau of Census,* 6 F.L.R.A. 314 (1981).